Ellsworth Tuthill et al., Respondents, *v.* William H. Skidmore et al., Appellants.

Where one engaged in commerce permits his commercial paper to be dishonored and his property to be attached in an action in which judgment is subsequently recovered by default, this is evidence, and if unexplained is proof of insolvency.

When the price of goods sold on credit is due and unpaid, and the vendee becomes insolvent before obtaining possession, the vendor has the right to retain possession of the property as security for the purchase-price, as against the vendee or his attaching creditor, which right is greater than a lien.

In an action of replevin to recover possession of property sold by plaintiffs to one L., but left in plaintiffs' possession until after notes given for the purchase became due and were dishonored, and which had been levied upon by defendants by virtue of an attachment against L., plaintiffs alleged title to the property, and, also, that they "had a special property therein, to wit: A lien for unpaid purchase-money." The defendants' answer denied specifically both of these allegations. No motion was made to make the complaint more definite and certain, and it affirmatively appeared that defendants were neither harmed nor misled by the omission to set forth "the facts upon which the special property depends," as required by the Code of Civil Procedure (§ 1720). *Held*, that the defect was not such as would require a reversal of the judgment.

At the beginning of the trial defendants moved that plaintiffs be compelled to elect whether they would seek to recover on the ground of ownership or of a lien for unpaid purchase-money. The court decided to first hear the evidence, and defendants excepted. At the close of

plaintiffs' case. defendants offering no evidence, both parties asked the court to direct a verdict. *Held,* that as it did not appear defendants were harmed by the ruling of the court, it was not a ground of review; that as the two inconsistent claims appeared in the complaint, defendants should, before answering, have moved that plaintiffs be compelled to elect.

Also *held,* that plaintiffs, by alleging and asserting on the trial absolute ownership, and also a special interest or lien, did not thereby waive their special interest or lien, as the inconsistency between the two claims arose not from the facts, but related wholly to the legal conclusions to be drawn from conceded facts.

*Hudson* v. *Swan* (83 N. Y. 552), distinguished.

Where a complaint sets forth two inconsistent causes of action, and the defendant waits until the trial and then moves that plaintiff be compelled to elect between them, the court may decline to decide the motion until part or all of the evidence is taken, and a denial of the motion is so far discretionary that it will not be reviewed when it appears that defendant was not harmed.

(Argued December 11, 1890; decided January 14, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 14, 1888, which affirmed a judgment in favor of plaintiffs entered upon a verdict directed by the court, and affirmed an order denying a motion for a new trial.

This was an action of replevin.

On September 11, 1886, the plaintiffs, under their firm name of Ellsworth Tuthill & Co., and Walter E. Lawton, doing business under the name of Lawton Brothers, entered into the following written contract:

"*September* 11, 1886.

"Sold for account of Messrs. Ellsworth Tuthill & Co. to Messrs. Lawton Brothers, New York, five hundred tons sellers' usual good make platform-dried fish scrap, not treated with acids, of this season's make, to be ready for delivery before close of sellers' works, at $28 per ton of 2,000 lbs., actual weight in bulk, F. O. B. sellers' factory, Promised Land, Long Island. Terms, payment by buyer's notes at four months, with interest, added at a rate of six per cent per annum from date of delivery on presentation, bills of lading,

invoice, weigher's return, and Stillwell & Gladding's certificate of moisture. If scrap removed before closing sellers' factory this fall, or, if scrap is not removed before such time, buyers are to give their notes, bearing same interest for an approximate amount, bearing date of such closing. Buyers to have privilege of leaving scrap at their own risk, free of charge for storage, till opening of fishing season of spring, 1887, provided if they require any scrap between such closing and opening, buyers are to pay thirty-five cents per ton for loading. Scrap guaranteed not to exceed twelve per cent. moisture, Stillwell & Gladding's analysis from samples drawn in the usual way. Scraps to be in good order and condition."

From the date of this contract to the date of the trial of this action (October 25, 1887), the plaintiffs at all times had on hand at their factory at Promised Land, L. I., more than 500 tons of fish scrap of the kind and quality mentioned in the contract, but the quantity sold nor any part of it was ever set apart for the vendee. November 12, 1886, the vendee gave the vendors, towards the purchase-price, three promissory notes signed by the purchaser and payable to the order of the sellers, of the dates, for the amounts and due as follows:

| Date. | Amount. | Time. | Due. |
|---|---|---|---|
| Nov. 12, 1886... | $5,000... | Four months... | March 15, 1887. |
| Nov. 19, 1886... | $5,000... | Four months... | March 22, 1887. |
| Nov. 26, 1886... | $3,000... | Four months... | March 29, 1887. |

The purchase-price was $14,000 and after deducting these notes $1,000 remained, which was never paid nor was a note given for it. These notes were all dishonored and have never been paid, nor has any part of the purchase-price of the property. About the 1st of December, 1886, the plaintiffs sent the purchaser the following receipt:

"Ellsworth Tuthill & Co., Manufacturers of

"Menhaden Oil and Guano, Factory at Promised Land, L. I.

"Promised Land, N. Y., *Nov.* 12, 1886.

"We hereby certify that we hold five hundred (500) tons of platform dried fish scrap, of good quality and in good condi-

tion, in bulk, subject to the order of Mess. Lawton Bros., in our factory at Promised Land, Long Island, Suffolk county, N. Y., as per terms of contract.

"ELLSWORTH TUTHILL & CO.

" Dated *September 11th.*"

March 24, 1887, Joseph L. Morton began an action in the Supreme Court against Walter E. Lawton for the recovery of money, in which an attachment was issued, by virtue whereof, March 28, 1887, the defendant Skidmore, as sheriff, and the defendant Hand, as his deputy, levied upon and seized 500 tons of fish scrap then stored at the plaintiff's factory. The quantity attached was not separated from a larger quantity of which it was a part, and was never removed from the plaintiffs' premises. June 15, 1887, Morton recovered a judgment against Lawton in that action for $22,629.66, which was entered in the office of the clerk of the city and county of New York, a transcript of which was duly filed and the judgment duly docketed June 27, 1887, in the office of the clerk of the county of Suffolk. May 13, 1887, the plaintiffs demanded of the defendants that they release the attachment and surrender the property to them, which was refused, and on the next day this action in replevin for the recovery of the property was begun. Upon the trial, each party asked that a verdict be directed in his favor, neither claiming that there was any question of fact for the jury. A verdict was directed for the plaintiffs.

*Abram Kling* for appellant. The plaintiffs cannot recover in this action on the allegation in their complaint that Lawton wrongfully took the chattels from said plaintiffs, as the evidence established that said property came lawfully in the possession of said Lawton by reason of the sale to him by said plaintiffs. (*Olyphant* v. *Baker*, 5 Den. 379; *Williamson* v. *Berry*, 8 How. [U. S.] 544; *Bradley* v. *Wheeler*, 44 N. Y. 495; *Sanders* v. *Waterbury*, 116 id. 371; Benjamin on Sales, § 315; *Barrett* v. *Goddert*, 3 Mason, 107; *Terry* v. *Wheeler*, 25 N. Y. 520; *Kimberly* v. *Patchen*, 19 id. 330; *Russell* v. *Carrington*, 42 id. 125; *Crofoot* v. *Bennett*, 2 id. 258; *Bur-*

*rows* v. *Whitaker*, 71 id. 291.) As the plaintiffs cannot maintain their action on the ground that the chattel was wrongfully taken, but only upon the theory of the wrongful detention of the said property, the facts and circumstances showing how such detention was wrongful must be set forth in the complaint, which was not done, so the exception to the admission of evidence and the refusal to dismiss the complaint on this ground was error. (Code Civ. Pro. § 1721; 5 Wait's Act. & Def. 456; *Curtis* v. *Jones*, 3 Den. 590; *Patterson* v. *Adams*, 7 Hill, 126.) The plaintiffs cannot recover upon the complaint in this action in which they claim title as owners, and not by virtue of a lien for unpaid purchase-money, as the claim of ownership was inconsistent with that of a lien, and no cause of action on the latter ground is set forth in the complaint. (*Hudson* v. *Swann*, 83 N. Y. 552; *Mixal* v. *Dearborn*, 12 Gray, 336; *Saltus* v. *Everett*, 20 Wend. 268; *Hackswell* v. *Farnam*, 7 How. Pr. 236.) The plaintiffs must allege, as well as prove, the facts constituting his cause of action, and a recovery upon a cause of action not alleged in the complaint, although proved under exception and objection upon the trial, is not sustainable. (*Clark* v. *Post*, 113 N. Y. 18.) The plaintiffs could in no event have maintained this action on the ground of lien, or special property in the chattels, by virtue of unpaid purchase-money, as they have failed to establish the insolvency of Lawton when his credit expired. (*Riddle* v. *Varnum*, 20 Pick. 280; *McEwen* v. *Smith*, 2 H. L. Cas. 309; *Durgy* v. *O'Brien*, 123 Mass. 12; 5 Wait's Act. & Def. 614; *Nichols* v. *Micheals*, 23 N. Y. 264.)

*Thomas Young* for respondents. If the legal title to the scrap in question passed from the plaintiffs to Walter E. Lawton the respondents have a lien thereon for the purchase-money. (Story on Sales, §§ 285, 286; 1 Pars. on Cont. [5th ed.] 526; *Bloxam* v. *Sanders*, 4 B. C. 941; Bump on Bankruptcy, 683; Benjamin on Sales, 819; *Brown* v. *Montgomery*, 20 N. Y. 287, 291; *Brower* v. *Harbeck*, 9 id. 594.) The giving of the paper above mentioned of November 12, 1886,

can hardly be regarded as a symbolical delivery of the goods. (Story on Sales, §§ 287, 288, 339; Benjamin on Sales, § 823.) There is room for question, whether title passed to Lawton as the effect of what transpired between him and plaintiffs. If title did not pass, then plaintiffs, as owners of the goods, have a right to hold them against Lawton and his creditors. (*Kein* v. *Tupper*, 52 N. Y. 550; *Foote* v. *Marsh*, 51 id. 288; *Stephens* v. *Santee*, 49 id. 35; *Stone* v. *Browning*, 68 id. 598; *Anderson* v. *Reed*, 106 id. 333.) The court ruled correctly in not requiring plaintiffs to elect, and go upon either lien alone or title alone, as asked on the trial by the defendants. (Code Civ. Pro. §§ 488, 499; *Hudson* v. *Swan*, 83 N. Y. 552; *Leggett* v. *Hyde*, 58 id. 272, 275; *Tuthill* v. *Skidmore*, 15 N. Y. S. R. 892; *Lloyd* v. *Brewster*, 4 Paige, 540.) The complaint as regards the claim of lien is sufficient. (Code Civ. Pro. §§ 721, 722, 723, 1726; Sedgwick on Dam. [5th ed.] 582; *Brewster* v. *Silliman*, 38 N. Y. 423; *Rowley* v. *Gibbs*, 14 Johns. 385.)

Follett, Ch. J. It will be assumed that the title to the property passed to the vendee, which is the most favorable view which can be taken of the case for the defendants.

Permitting commercial paper to be dishonored by one engaged in commerce, and his property to be attached in an action in which judgment is subsequently recovered by default is evidence, and if unexplained is proof of insolvency. (*Brown* v. *Montgomery*, 20 N. Y. 287; *Booth* v. *Powers*, 56 id. 22, 32; Abb. Tr. Ev. 616.)

Neither party asserting at the trial that Lawton's solvency was a question of fact for the jury, the court was justified in holding as a question of law that he was insolvent.

When the price of goods sold on credit is due and unpaid, and the vendee becomes insolvent before obtaining possession of them, the vendor's right to the property is often called a lien, but it is greater than a lien. In the absence of an express power the lienor usually cannot transfer the title to the property on which the lien exists by a sale of it to one having

notice of the extent of his right, but he must proceed by fore-
closure.    When a vendor rightfully stops goods *in transitu*,
or retains them before *transitus* has begun, he can, by a sale
made on notice to the vendee, vest a purchaser with a good
title.   (*Dustan* v. *McAndrew*, 44 N. Y. 72.)   His right is
very nearly that of a pledgee, with power to sell at private
sale in case of default.   (*Bloxam* v. *Sanders*, 4 B. & C. 941 ;
*Bloxam* v. *Morley*, 4 id. 951 ; *Milgate* v. *Kebble*, 3 M. & G.
100 ; *Audenreid* v. *Randall*, 3 Cliff. 99, 106 ; Black. Sal.
[2d ed.] 445, 454, 459 ; Benj. Sal. [Corbin's ed.] § 1280 ;
Jones' Liens, § 802.)   The vendee having become insolvent
and refused payment of the notes given for the purchase-price
of the property which remained in the vendor's possession, his
right to retain it as security for the price was revived as
against the vendee and his attaching creditor.   (*Arnold* v.
*Delano*, 4 Cush. 33 ; *Haskell* v. *Rice*, 11 Gray, 240 ; *Milliken*
v. *Warren*, 57 Maine, 46 ; *Clark* v. *Draper*, 19 N. H. 419 ;
*Bloxam* v. *Sanders*, 4 B. & C. 941 ; *Bloxam* v. *Morley*, Id.
951 ; *Hamburger* v. *Rodman*, 9 Daly, 93 ; Benj. Sal. [Ben-
nett's ed.] § 825 ; 2 id. [Corbin's ed.] § 1227 ; Story Sal. § 285 ;
Black. Sal. 454.)

The plaintiffs allege in their complaint that they own the
property, and also that they " had a special property therein,
to wit: A lien for unpaid purchase-money," both of which
allegations the defendants specifically denied.   It is now
insisted, as it was at the trial by the defendants, that the alle-
gation in respect to the special property is not a compliance
with section 1720 of the Code of Civil Procedure, which pro-
vides that when " the right of action or defense rests upon a
right of possession by virtue of a special property, in which
case the pleading must set forth the facts upon which the
special property depends so as to show that at the time when
the action was commenced or the chattel replevied, as the case
may be, the party pleading or the third person who is entitled
to the possession of the chattel."   The defendants not having
moved to make the complaint more definite and certain, and
it affirmatively appearing that they were neither harmed nor

misled by the omission to set forth all of the facts out of which
the special property arose, the judgment will not be reversed
for this defect in the complaint.

When the trial began it was moved in behalf of the defend-
ants that the plaintiffs be compelled to elect whether they
would seek to recover on the ground that they owned the
property or on the ground that they had a lien thereon for
unpaid purchase-money.   To this request the court replied " I
will hear the evidence first before I compel him to do that."
To this remark the defendants excepted.   At the close of the
plaintiffs' case, the defendants offering no evidence, both parties
asked the court to direct a verdict.

The object of requiring plaintiffs to elect between incon-
sistent causes of action is to simplify the issues of fact so that
they may be intelligibly and fairly tried, but it is plain in
this case, that the defendants were not misled nor harmed by
the refusal of the court to compel an election.   The plaintiffs'
allegation that they owned the property and their allegation
that they had a lien thereon for unpaid purchase-money are
inconsistent.   (*Hudson* v. *Swan*, 83 N. Y. 552.)   But when, as
in the case at bar, the inconsistency plainly appears on the face
of the complaint, the defendants should, before answering,
move that the plaintiffs be compelled to elect.   (*Cassidy* v.
*Daly*, 11 W. Dig. 222.)   If in such a case the defendant lies
by until the trial and then moves, the court may in its discre-
tion wait until part or all of the evidence is taken before
deciding the motion (*Southworth* v. *Bennett*, 58 N. Y. 659),
and its denial is so far discretionary (*Kerr* v. *Hayes*, 35 N. Y.
331, 336; *People* v. *Tweed*, 63 id. 194), that it will not be
reviewed when it appears that the defendant was not harmed.

It is also urged on the authority of *Hudson* v. *Swan* (*supra*),
and the cases therein cited, that the plaintiffs by alleging in
their complaint and asserting at the trial absolute ownership
of the property, and also a special interest in or lien upon it,
waived their special interest or lien, if any they had, and can-
not recover without establishing ownership.   In the case cited
the facts alleged by the plaintiff to establish ownership were

inconsistent with those upon which he relied to establish a lien, which is not the fact in the case at bar. As has been shown, the plaintiffs' interest was more than that of mere lienors, and there being no dispute about the facts, the inconsistency relating wholly to the legal conclusions to be drawn from the agreed facts, the case cited is not controlling.

The judgment should be affirmed, with costs.

All concur, except BROWN, J., not sitting.

Judgment affirmed.